IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
                                   )
CHRISTOPHER BEECHAM,               )
                                   )
                    Plaintiff,     )
                                   )
          vs.                      )  Civ. No. 11-00129 ACK-BMK
                                   )
WYNDHAM VACATION RESORTS, INC.,    )
                                   )
                    Defendant.     )
                                   )
```

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WYNDHAM'S MOTION FOR SUMMARY JUDGMENT

On April 27, 2010, Plaintiff Christopher Beecham ("Plaintiff" or "Beecham") filed a Complaint in the First Circuit Court of the State of Hawaii against Wyndham Worldwide Corporation, Wyndham Worldwide Operations, Inc., Wyndham Resort Development Corporation, Wyndham Vacation Ownership, Inc., and Wyndham Vacation Resorts, Inc., asserting a number of claims related to his not being hired as a sales manager (or in the alternative, for being fired as such).  ECF No. 1.  The Complaint apparently was not served on the defendants.  Id.  On January 24, 2011, Plaintiff filed a First Amended Complaint ("FAC") in the First Circuit Court of the State of Hawaii against the defendants listed in the original Complaint.  ECF No. 1.  The defendants removed the action to this Court on March 1, 2011.  ECF No. 1

-1-

On November 4, 2011, the parties stipulated to dismiss without prejudice defendants Wyndham Worldwide Corporation, Wyndham Worldwide Operations, Inc., Wyndham Resort Development Corporation, and Wyndham Vacation Ownership, Inc.  ECF No. 12. Accordingly, only Wyndham Vacation Resorts, Inc. ("Defendant" or "Wyndham") remains as a defendant in this matter.  Id.

Defendant Wyndham filed a Motion for Summary Judgment ("MSJ") on June 14, 2013, along with a Concise Statement of Facts ("Def.'s CSF").  ECF Nos. 64 & 65.  Both Plaintiff and Defendant thereafter agreed to move the hearing date regarding Defendant's MSJ to December 2, 2013, which was continued to December 5, 2013. ECF Nos. 70, 75.  Plaintiff filed his Opposition and Concise Statement of Facts ("Plntf.'s CSF") on November 14, 2013.  ECF Nos. 83 & 84.  Defendant filed its Reply on November 21, 2013, along with an Objection to the Admissibility of Some of Plaintiff's Exhibits and Declarations.[1/]  ECF Nos. 90 & 91.  On November 27, 2013, Plaintiff filed a Submission of Uncited Authorities in Support of Memorandum in Opposition to Defendant

---

[1/]  The Court will address specific objections to particular declarations and evidence where relevant in this order. Regarding the exhibits that the Court does not rely upon in this order, the Court DECLINES at this time to rule on the objections. The Court's ruling on Defendant's objections does not preclude Defendant from raising any evidentiary objections at any future proceeding, such as at trial.

Wyndham Vacation Resorts, Inc.'s Motion for Summary Judgment.[2]
ECF No. 98.  On December 5, 2013, Defendant submitted additional
authorities to the Court.[3]  The Court held a hearing regarding
this matter on December 5, 2013.  ECF No. 104.

## FACTUAL BACKGROUND

### A. Wyndham's Operations

Wyndham, formerly known as Fairfield Resorts, Inc., is
a for-profit company and the world's largest timeshare operator.
Decl. of O'Neill at 1, ¶ 2, ECF No. 65-1.  As a timeshare
company, Wyndham's profits depend primarily on its sales.  Id. at
2, ¶ 4.  Its sales representatives (or sales agents) conduct
presentations, called "tours," to individuals, called "guests,"

---

[2]  The Court notes that Plaintiff's submission contains
cases from ten years ago in addition to analysis and argument
regarding the present case, which should have been submitted in
Plaintiff's Opposition under Local Rule 7.4.  Plaintiff has not
provided any reason for improperly including analysis and
arguments in the submission, and Defendant has not had an
opportunity to address Plaintiff's arguments.  The Court
therefore disregards Plaintiff's filing under Local Rule 7.4 as
untimely and prejudicial to Defendant.

[3]  The Court notes that Plaintiff objected to Defendant's
introduction of additional cases at the December 5, 2013 hearing.
The Court concludes that Defendant's submission of these cases
does not violate Local Rule 7.8 because there is no further
analysis or argument attached to Defendant's cases.  Moreover,
the Court had already considered the Staub v. Proctor Hospital,
131 S.Ct. 1186, 179 L. Ed. 2d 144 (2011) case through its own
preparation for the hearing before Defendant raised the case.
Even if the Court were to strike Defendant's submission of the
cases, Staub would be considered in this decision as relevant
law.

-3-

who agree to attend a tour in exchange for a free gift.  Id. at 1-2, ¶ 3.

Wyndham operates two primary sales lines: "front-line" sales to individuals who have not previously purchased timeshares from Wyndham, and "in-house" sales catering primarily to existing timeshare owners who are interested in purchasing upgrades. Decl. of O'Neill at 1, ¶ 3, ECF No. 65-1.  Sales agents are assigned tours based on a "rotor," or sequence of priority, which is determined by an agent's past sales performance.  Id. at ¶ 5.

**B. Plaintiff's Employment at Wyndham from 2001 - 2009**

Plaintiff Beecham, born in 1942, started his employment with Wyndham, formerly known as Fairfield Resorts, Inc., in 1993 as a timeshare salesperson at the Grand Desert Resort.  Def.'s CSF at 1, ¶ 1, ECF No. 65; Plntf.'s CSF at 2, 6 ¶ 42, ECF No. 84. He transferred to the Waikiki office around 2001 or 2002.  Id.

In February of 2007, Charles Barker became the Wyndham Waikiki office's Vice President of in-house sales.  Def.'s CSF at 1, ¶ 4; Plntf.'s CSF at 2, ECF No. 84.  Plaintiff admits that his working relationship with Barker was "very, very good."  Def.'s CSF Ex. A (Depo. of Beecham) at 151, ECF No. 65-4; Plntf.'s CSF at 2, ECF No. 84.  Plaintiff also admits that Barker tried to ensure that "things were done right" in his department.  Def.'s CSF Ex. A at 305-306; Plntf.'s CSF at 2, ECF No. 84.

-4-

In 2007, Plaintiff authored a letter entitled "Internal Problems" dated September 21, 2007 ("Internal Problems Letter" or "Letter").  Def.'s CSF at 1, ¶ 5, ECF No. 65; Plntf.'s CSF at 2, ECF No. 84.  The content of the Internal Problems Letter addressed, inter alia, allegations of favoritism toward another Wyndham employee, Aline Lam.  Plntf.'s CSF at 6-7, ¶¶ 45-47, ECF No. 84.  The Internal Problems Letter was signed by Plaintiff and four other Wyndham salespeople - Ofer Ahuvia, Garth Starks, Jody Myers, and Bill Groten.  Plntf.'s CSF Ex. 16 at P30060, ECF No. 84-7.  Starks, Myers, and Groten partially withdrew their support soon thereafter; in general, they indicated that they witnessed some of the events but did not support all of the allegations in the Internal Problems Letter.  Plntf.'s CSF Exs. 23, 24, & 25, ECF No. 84-8.  Plaintiff and another salesperson, Ofer Ahuvia, allegedly complained about the favoritism shown towards Lam in the summer of 2007 before submitting the Internal Problems Letter.  Plntf.'s CSF at 6, ¶ 46, ECF No. 84.

After reviewing the Internal Problems Letter, Barker issued additional rules and regulations in the Wyndham Waikiki office addressing proper employee conduct.  Def.'s CSF at 2, ¶ 8, ECF No. 65; Plntf.'s CSF at 2, ECF No. 84.  Plaintiff contends that certain managers at Wyndham, namely Darrin Moreman, Terrence Limebrook, and Aly Hirani, were negatively impacted by the Internal Problems Letter.  Id.

-5-

Plaintiff alleges that he was being "starved out" as a result of submitting the Internal Problems Letter because Wyndham started to give him 84/216 tours.  Decl. of Beecham at 9, ¶ 46, ECF No. 84-2.  The 84/216 tours involved potential clients who could not afford a regular timeshare.  Id. at 4, ¶ 16.  Because these potential clients had limited purchasing power, the probability that they would purchase an upgrade from an in-house salesperson was very low.  Id.

At some point in 2008, Plaintiff transferred from Wyndham's Waikiki office to Wyndham's Grand Desert location in Las Vegas.  Def.'s CSF at 2, ¶ 10, ECF No. 65.  Plaintiff acknowledged that his sales performance in Las Vegas was worse than his sales performance near the end of his tenure in Waikiki.  Def.'s CSF at 2, ¶ 11; Plntf.'s CSF at 2, ECF No. 84.  However, Plaintiff argues that his sales at Las Vegas were negatively impacted by Defendant's decision to assign him 84/216 tours in Waikiki in retaliation for writing the Internal Problems Letter.  Decl. of Beecham at 9, ¶ 46, ECF No. 84-2.  As a result of giving him poor sales leads in Waikiki, Wyndham listed Plaintiff as number 51 on the sales rotation at the Las Vegas location, which meant that 50 clients would need to walk into the office before Plaintiff would be given a chance to make a sale.  Id.

After securing employment with Marriott, Plaintiff submitted a resignation letter to Wyndham on February 19, 2009.

-6-

Def.'s CSF at 2, ¶ 13, Ex. G, ECF No. 65; Plntf.'s CSF at 2, ECF No. 84.

**C. Wyndham's Alleged Offer of Re-employment and Promotion**

Shortly after Plaintiff started his employment with Marriott, Barker contacted him and said that Jonathan O'Neill, Wyndham's new Vice President, and Mark Pollard, the Area Vice President, had asked if Plaintiff would be interested in returning to Wyndham as a manager.  Def.'s CSF at 2, ¶ 14, ECF No. 65; Plntf.'s CSF at 2, ECF No. 84.  Pollard told Plaintiff that a sales manager position was available.  Id. at ¶ 15. Plaintiff expressed hesitation about the position because he had previously applied for a Director of Sales position and had been denied, but Pollard allegedly stated that the situation at Wyndham was different.  Id.

Plaintiff met with O'Neill and Pollard at a restaurant called the Yard House on May 18, 2009 ("Yard House Meeting").  Def.'s CSF at 3, ¶ 18, ECF No. 65; Plntf.'s CSF at 2, 7 ¶ 54, ECF No. 84.  The parties have different accounts of what happened at the meeting.  According to Plaintiff, O'Neill and Pollard made a job offer to Plaintiff, which he in turn accepted.  Plntf.'s CSF at 8, ¶ 57, ECF No. 84.  According to Defendant, Wyndham never offered Plaintiff a firm or final offer of employment.  Def.'s CSF at 3, ¶¶ 16-17.  Pollard allegedly stated that Plaintiff would need to submit an application to human resources.  Id.

Additionally, Defendant argues that Plaintiff requested a written offer and indicated that he would not leave Marriott without such an offer.  Id.  Wyndham never provided a written offer, and Plaintiff did not leave his employment at the Marriott.  Id.

Plaintiff also attaches exhibits of emails from Wyndham employees.  In one email dated May 18, 2009, Andrea Ward, the Regional Director of Human Resources, stated that Plaintiff had "applied for a Front Line Manager position" and that she "approve[d] with reservations since he does not have recent management experience, and was involved in two employee relations issues at the site in 2006 and 2007."  Plntf.'s CSF Ex. 41, ECF No. 84-13.  In another email from O'Neill to Plaintiff dated May 19, 2009, O'Neill states, "Really looking forward to having you 'come back home!'"  Plntf.'s CSF Ex. 44, ECF No. 84-13.  Plaintiff also submits an email dated May 19, 2009, from John Gonsalves, Wyndham's Human Resources Coordinator, containing compensation information.  Plntf.'s CSF Ex. 43, ECF No. 84-13.

After the Yard House Meeting on May 18, 2009, O'Neill allegedly told Plaintiff that he had been getting "a little bit of static" from Hirani about hiring Plaintiff as a manager, but O'Neill indicated that he would choose Plaintiff over Hirani.  Def.'s CSF at 3, ¶ 19, ECF No. 65; Plntf.'s CSF at 2, ECF No. 84.  O'Neill asked Plaintiff to attend a meeting of Wyndham managers that took place on June 1, 2009 ("Managers Meeting").  Id.  At

-8-

the Managers Meeting, Plaintiff surreptitiously recorded the meeting. Id. at ¶ 20.

The parties differ as to what occurred at the Managers Meeting. Plaintiff alleges that Hirani, Moreman, and Limebrook gave Plaintiff a "verbal battering" on account of the Internal Problems Letter dated September 21, 2007. Plntf.'s CSF at 8, ¶ 62, Decl. of Beecham at 14, ¶¶ 77-78, ECF No. 84-2. Defendant states that the participants of the meeting discussed Plaintiff's eligibility for re-hire with Wyndham, the pay cut Plaintiff would be taking if he returned to Wyndham, Plaintiff's allegedly self-centered personality, and the alleged negative attitude Plaintiff displayed when facing adversity or dealing with others who performed better than he did. Def.'s CSF at 3, ¶ 21, Decl. of O'Neill at 6, ¶¶ 13-23, ECF No. 65.

O'Neill at some point decided that Plaintiff would not work for Wyndham as a manager, although the parties disagree as to whether or not Plaintiff had been hired and subsequently released, or whether he had been denied the manager position. Def.'s CSF at 5, ¶ 30, ECF No. 65; Plntf.'s CSF at 8, ¶¶ 63-66, ECF No. 84.

**D. Plaintiff's Allegations of Discrimination by Wyndham**

Plaintiff alleges that, while he was employed at Wyndham during 2007 and 2008, Aly Hirani and Terrence Limebrook, two managers at Wyndham, would make ageist comments to him and

-9-

another salesperson, Ofer Ahuvia.  Decl. of Beecham at 18, ¶ 101-104, ECF No. 84-2.  Hirani referred to Plaintiff as an "old fart" on numerous occasions.  Id. at ¶ 101.  Although Plaintiff asked Hirani to stop, Hirani continued to call him an "old fart."  Id. On other occasions, Limebrook and Hirani would comment on an attractive woman, then turn to Plaintiff and state "not for you. You're too old."  Id. at 102.  Plaintiff also recalls that Hirani and Limebrook commented on Ahuvia's sales technique, stating that "he's from the old school, that what [sic] the old timers or the old guys did it."  Id. at 104.

Plaintiff also argues that various Wyndham managers favored Aline Lam, another salesperson in her 30s during the events giving rise to this lawsuit.  Decl. of Beecham at 8, ¶ 40. Plaintiff states that, when he worked for Wyndham in 2007 as a salesperson, he and Ahuvia made complaints throughout the summer of 2007 about the favoritism shown toward "the younger Ms. Lam." Id. at 41.  Plaintiff states that the Wyndham managers would give Lam more favorable tours among other acts of favoritism; Plaintiff claims that he and Ahuvia felt that they were being discriminated against because of their age.  Id. at 4, ¶ 15, ECF No. 84-2.

## **STANDARD**

A party may move for summary judgment on any claim or defense - or part of a claim or defense - under Federal Rule of

Civil Procedure ("Rule") 56.  Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  Under Rule 56, a "party asserting that a fact cannot be or is genuinely disputed must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

The substantive law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment."  Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party."

United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012)

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247

(1986)).  Conversely, "[w]here the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving

party, there is no genuine issue for trial." Scott, 550 U.S. at

380.

The moving party has the burden of persuading the court

as to the absence of a genuine issue of material fact.  Avalos v.

Baca, 596 F.3d 583, 587 (9th Cir. 2010).[4/]  If the moving party

satisfies its burden, the nonmoving party "must do more than

simply show that there is some metaphysical doubt as to the

material facts." Sluimer v. Verity, Inc., 606 F.3d 584, 587 (9th

Cir. 2010).  The nonmoving party must present evidence of a

"genuine issue for trial," Fed. R. Civ. P. 56(e), that is

"significantly probative or more than merely colorable." LVRC

Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009)

(citation omitted).  Summary judgment will be granted against a

party who fails to demonstrate facts sufficient to establish "an

element essential to that party's case and on which that party

---

[4/]  When the party moving for summary judgment would bear
the burden of proof at trial, the movant must present evidence
which would entitle it to a directed verdict if the evidence were
to go uncontroverted at trial. Miller v. Glenn Miller Prods., 454
F.3d 975, 987 (9th Cir. 2006) (citation omitted). In contrast,
when the nonmoving party would bear the burden of proof at trial,
the party moving for summary judgment may meet its burden by
pointing out the absence of evidence from the nonmoving party.
Id. (citation omitted).

will bear the burden of proof at trial." <u>Parth v. Pomona Valley Hosp. Med. Ctr.</u>, 630 F.3d 794, 798-99 (9th Cir. 2010) (citation omitted).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007).  The court may not, however, weigh conflicting evidence or assess credibility.  <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008).[5] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. <u>Anderson</u>, 477 U.S. at 250-51.

<u>**DISCUSSION**</u>

**I. Voluntary Dismissal of Count I - Violation of Title VII of the Civil Rights Act of 1964, Count IV - Intentional Infliction of Emotional Distress, Count VI - Intentional Misrepresentation,**

---

[5]  Nonetheless, a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a genuine issue of material fact. <u>F.T.C. v. Neovi, Inc.</u>, 604 F.3d 1150, 1159 (9th Cir. 2010).  Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott</u>, 550 U.S. at 380. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1080 (9th Cir. 2012).

**Count VII - Interference with Prospective Business Advantage, and Count VIII - Promissory Estoppel**.

In his Opposition, Plaintiff stated that he is willing to voluntarily dismiss the following counts:  Count I - Violation of Title VII of the Civil Rights Act of 1964, Count IV - Intentional Infliction of Emotional Distress, Count VI - Intentional Misrepresentation, Count VII - Interference with Prospective Business Advantage, Count VIII - Promissory Estoppel. See Pltnf.'s Opp. at 4, 26-27, & 31, ECF No. 83-2.  On December 18, 2013, Plaintiff and Defendant filed a stipulation voluntarily dismissing the aforementioned claims.  ECF No. 115.  The remaining claims in this case are Count II - Violation of Age Discrimination in Employment Act, Count III - Violation of Hawaii Revised Statutes Section 378-2, and Count V - Breach of Contract. See FAC at 28-29, ECF No. 1-2.  The Court will now address these remaining claims.

**II.  Count II - Violation of the Age Discrimination in Employment Act and Count III - Violation of Hawaii Revised Statutes Section 378-2.**[6]

**A. Statutory Framework**

_____

[6] Plaintiff stated in his Opposition that he is not making a claim based on the protected classes of sex, gender, race, or national origin.  Plntf.'s Opp. at 4, ECF No. 83-2.

-14-

Under the ADEA, an employer may not refuse to hire or discharge an individual who is at least 40 years of age "because of" the individual's age. 29 U.S.C. § 623(a)(1); 29 U.S.C. § 631(a). The Supreme Court has identified two theories of employment discrimination: disparate treatment and disparate impact. Enlow v. Salem-Keizer Yellow Cab Co., Inc., 389 F.3d 802, 811 (9th Cir 2004) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993)). Plaintiff raises a disparate treatment claim. See Plntf.'s Opp. at 4, ECF No. 83-2.

For a disparate treatment claim, liability depends on "whether the protected trait (under the ADEA, age) *actually* motivated the employer's decision." Enlow 389 F.3d at 811. The Supreme Court has held that "the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." Id at 811 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000)). To establish age discrimination under the disparate treatment theory, a plaintiff may provide (1) "direct evidence" or (2) "circumstantial evidence" of age discrimination. Sheppard v. David Evans and Assoc., 694 F.3d 1045, 1050 (9th Cir. 2012).

Direct evidence is defined as "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact

-15-

finder to infer that the attitude was more likely than not a motivating factor in the employer's decision." Enlow v. Salem-Keizer Yellow Cab Co., Inc, 389 F.3d 802, 812 (9th Cir. 2004) (citing Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999) and Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444 (8th Cir. 1993)).  Such evidence is usually composed of "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1095 (9th Cir. 2005); Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1113 (9th Cir. 2011) (noting that "comments from supervisors betraying bias or animus against older workers" constitute direct evidence of age discrimination).  "Because direct evidence is so probative, the plaintiff need offer 'very little direct evidence to raise a genuine issue of material fact.'" Coghlan, 413 F.3d at 1095.

          Alternatively, in the absence of direct evidence, motions for summary judgment regarding ADEA claims may be analyzed using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Shelley v. Geren, 666 F.3d 599, 608 (9th Cir. 2012) (holding that the McDonnell Douglas burden-shifting framework applies to summary judgment motions under the ADEA).

          Under the McDonnell Douglas framework, Plaintiff must first present a prima facie case of age discrimination by

producing evidence that (1) he was at least forty years old, (2) he "qualified for the position for which an application was submitted," (3) he was denied the position, and (4) the position was given to a "substantially younger person."[7/]  Shelley, 666 F.3d at 608.  The Ninth Circuit has held that "the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment."  Chuang v. Univ. of California Davis Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000).  "This is because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by a factfinder, upon a full record."  Id. (citing Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir. 1996)) (internal quotation marks omitted).

　　　　If the plaintiff establishes a prima facie case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."  Hawn v. Executive Jet Management,

---

[7/] In the alternative, for an ADEA discharge claim, a plaintiff must present evidence that he was "(1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination."  Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008).

<u>Inc.</u>, 615 F.3d 1151, 1155 (9th Cir. 2010); <u>see also</u> <u>Shelley</u>, 666 F.3d at 608.

If the employer articulates a legitimate, nondiscriminatory reason, then the burden shifts to Plaintiff to raise a genuine factual question as to whether the Defendant's reason is pretextual.  <u>Shelley</u>, 666 F.3d at 609.  A plaintiff may prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." <u>Shelley</u>, 666 F.3d at 609 (quoting <u>Chuang v. Univ. of Cal. Davis, Bd. of Trs.</u>, 225 F.3d 1115, 1124 (9th Cir. 2000)).  "All of the evidence—whether direct or indirect—is to be considered cumulatively."  <u>Shelley</u>, 666 F.3d at 609.

The Hawaiʻi Supreme Court has stated that, when addressing discrimination claims under H.R.S. § 378-2, the courts look to "federal laws by the federal courts for guidance." <u>Schefke v. Reliable Collection Agency, Ltd.</u>, 96 Haw. 408, 425, 32 P.3d 52, 69 (2001) (adopting test "consistent with the approach under Title VII"); <u>see</u> <u>Furukawa v. Honolulu Zoological Soc.</u>, 85 Haw. 7, 13, 936 P.2d 643, 649 (1997) (adopting test based upon <u>McDonnell Douglas</u> framework for Title VII discrimination case) <u>and</u> <u>Hac v. Univ. of Hawaii</u>, 102 Haw. 92, 101, 73 P.3d 46, 55

(2003) ("This court has adopted the McDonnell Douglas analysis in HRS § 378-2 discrimination cases."). Accordingly, the Court will examine the state law claims in conjunction with the ADEA claims and will identify any differences where relevant.

### B. Disparate Treatment

Regarding Plaintiff's prima facie case, Defendant does not contest Plaintiff's analysis that (1) Plaintiff, born in 1942, is a member of a protected class, (2) that he was qualified for the position, (3) that he experienced an adverse employment action by Defendant's decision not to hire him for the manager position or for terminating him from the position after hiring him, and (4) the position was filled by Marcus Burbank, a substantially younger person. See Plntf.'s Opp. at 6-7, ECF No. 83-2; Def.'s Reply at 4-7, ECF No. 91.

With respect to Wyndham's legitimate, nondiscriminatory reason, Defendant argues that O'Neill denied Plaintiff the manager position because of Plaintiff's alleged lack of leadership and other character qualities. Decl. of O'Neill at 7-8, ¶¶ 26-27, ECF No. 65-1. Defendant then contends that Plaintiff fails to produce any evidence of pretext. See Def.'s MSJ at 13, ECF No. 64-1. According to Defendant, O'Neill knew Plaintiff for approximately 20 years and was familiar with Plaintiff's age. Id. Notwithstanding this knowledge, O'Neill sought to hire Plaintiff for the manager position. Id. Thus,

Defendant argues that O'Neill's actions demonstrate that age
could not have been a factor in the adverse employment action
regarding the manager position.  Id.

The Ninth Circuit has held that, "where the same actor
is responsible for both the hiring and the firing of a
discrimination plaintiff, and both actions occur within a short
period of time, a strong inference arises that there was no
discriminatory motive."  Schechner v. KPIX-TV, 686 F.3d 1018,
1026 (9th Cir. 2012); see also Coghlan v. Am. Seafoods Co. LLC.,
413 F.3d 1090, 1096 (9th Cir. 2005).  The Court is required to
consider this "strong inference" in a summary judgment motion.
Id.  If the inference applies, then Plaintiff must present a
"strong case of bias necessary to overcome this inference."
Coghlan, 413 F.3d at 1098.

In this case, Barker called Plaintiff in May 2009
regarding Wyndham's interest in hiring Plaintiff for a sales
manager position.  Decl. of Beecham at 10, ¶ 53, ECF No. 84-2.
Plaintiff subsequently met with Pollard and O'Neill at the Yard
House Meeting on May 18, 2009, where Wyndham allegedly offered
Plaintiff the position and he accepted.  Id. at 11, ¶ 55-57.  The
Managers Meeting occurred on June 1, 2009, where O'Neill received
negative feedback regarding Plaintiff and apparently changed his
mind regarding Plaintiff's employment in a manager position.  Id.
at 23, ¶ 121-127.  O'Neill declares that he later decided not to

hire Plaintiff as a frontline sales manager based on the June 1, 2009 meeting.  Decl. of O'Neill at 7, ¶ 25, ECF No. 65-1.  Plaintiff indicates that he knew he had been rejected as a manager by July 14, 2009, according to a letter he wrote to Franz Hanning, the President and Chief Executive Officer at Wyndham.  Def.'s CSF Ex. D at P40007, ECF No. 65-7 ("I haven't heard from Jonathan O'Neil [sic] or anyone else, as to the outcome . . . . I heard that they gave the position to MR. Marcus Burbank . . .").

Under these facts, the same actor inference applies because Barker,[8/] O'Neill, and Pollard were responsible for allegedly offering the manager position to Plaintiff.  The adverse action occurred less than two months after the decision-makers expressed their interest in having Plaintiff fill the position of manager.  See Coghlan, 413 F.3d at 1097 (holding that same actor inference applied when time period of one year separated employer's favorable action and a subsequent adverse action).  Therefore, Plaintiff must present a strong case of bias to overcome the inference.  See id. at 1098.

---

[8/]  The record is not clear as to whether or not Barker was a decision-maker regarding Plaintiff's alleged offer of employment and the subsequent adverse employment action.  Plaintiff in his declaration states that Barker was either a Vice President or the Director of Sales for the Wyndham Waikiki location and therefore was one of the decision-makers with respect to the open manager position at Wyndham.  Decl. of Beecham at 10, ¶ 54, ECF No. 84-2.

Plaintiff argues that there is sufficient evidence that Wyndham supervisors favored younger workers. Plntf.'s Opp. at 8, ECF No. 83-2. Plaintiff first highlights ageist comments stated by Barker to Wyndham workers other than Beecham in 2007 and the beginning of 2008. Id. at 8-9. However, these comments allegedly made by Barker do not refute the same actor inference because Barker contacted Plaintiff in May of 2009 to assess Plaintiff's interest in working as a manager. Barker's alleged invidious age discrimination did not prevent him from expressing interest in hiring Plaintiff for a management role.[9/] See Coghlan, 413 F.3d at 1097 (indicating that plaintiff needs to show discriminatory animus that developed after favorable employment action) and Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (holding that "it is difficult to impute to [an employer] an invidious motivation that would be inconsistent with the decision to hire"). Moreover, Plaintiff fails to identify any evidence in the record that Barker played any part in Wyndham's decision not to employ Plaintiff as a manager. See Plntf.'s Opp. at 7-14, ECF No. 83-2.

---

[9/] Plaintiff also argues that Turolla made discriminatory comments, but such comments are not relevant because Turolla was not working at Wyndham during Plaintiff's 2009 hiring incident and therefore his bias could not have infected the decision. See Decl. of Beecham at 11, ¶ 56, ECF No. 84-2 ("Mr. Pollard responded by saying . . . those people (including Michael Turolla) were gone, that he had replaced Mr. Turolla.").

Plaintiff next argues that Wyndham managers Hirani and
Limebrook also made ageist comments toward Plaintiff when he
previously worked at Wyndham, and that these managers
significantly influenced the 2009 employment decision.  Plntf.'s
Opp. at 13, ECF No. 83-2; Decl. of Beecham at 18, ¶¶ 100-104, ECF
No. 84-2.  The Ninth Circuit has indicated that an employer may
be liable for discrimination if a biased subordinate "performs an
act motivated by discriminatory animus that is intended by the
supervisor to cause an adverse employment action, and that act is
a proximate cause of the ultimate employment action." Shelley v.
Geren, 666 F.3d 599, 610 (9th Cir. 2012) (citing Staub v. Proctor
Hospital, 131 S.Ct. 1186, 1194, 179 L. Ed. 2d 144 (2011); see
also Poland v. Chertoff, 494 F.3d 1174, 1184 (9th Cir. 2007);
Bergene v. Salt River Project Agr. Imp. & Power Dist., 272 F.3d
1136, 1141 (9th Cir. 2001) (holding that "a manager's retaliatory
motive may be imputed to the company if the manager was involved
in the hiring decision"), see also Perez v. Curcio, 841 F.2d 255
(9th Cir. 1988) (holding that subordinate supervisor of employee
might have been involved in demotion decision because the
ultimate decision-makers relied on supervisor's reports of
plaintiff's past conduct) and Lakeside-Scott v. Multnomah Cnty,
556 F.3d 797, 806 (9th Cir. 2009) (noting that the court of
appeals has affirmed liability of subordinates who wielded a

"significant degree of influence over the final decision maker's adverse employment decision").

Defendant in turn argued at the hearing that, under Staub v. Proctor Hospital, 131 S.Ct. 1186, 179 L. Ed. 2d 144 (2011), Wyndham could not be held liable for any alleged bias of Hirani and Limebrook because they were not Plaintiff's official "supervisors." According to Defendant, Staub has subsequently been interpreted to require that the biased worker be an official supervisor over an aggrieved plaintiff. In this case, Defendant argues that Hirani and Limebrook would have been considered a "peer" of Plaintiff because Plaintiff was interviewing for a management position.

However, the Court observes that Defendant's argument does not preclude Plaintiff's claim under Staub. In Vance v. Ball State University, the Supreme Court stated in the context of determining the meaning of "supervisor" that an employer may be liable if the employer "empowered that employee to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." 133 S. Ct. 2434, 2443 (2013). Additionally, the Supreme Court noted that, where the decision-making power is confined to a small number of individuals, if those individuals

-24-

rely on the recommendations of other workers who actually interact with the affected employee, "the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies." Id. at 2452.  Accordingly, it appears that the definition of a "supervisor" is not restricted to a particular title or hierarchal status within a company; instead, the Court must determine whether the Wyndham managers had the ability to affect a tangible employment action.[10/]  See id at 2453, citing Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 509 (7th Cir. 2004) (Rovner, J., concurring in part and concurring in judgment) ("Although they did not have the power to take formal employment actions vis-à-vis [the victim], [the harassers] necessarily must have had substantial input into those decisions, as they would have been the people most familiar with her work - certainly more familiar with it than the off-site Department Administrative Services Manager.").

The Court notes that this is not a case of co-workers going to a decision-maker and merely making complaints about the plaintiff.  Instead, this case involves a decision-maker, a new

---

[10/] Moreover, in Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047 (9th Cir. 2011), a Ninth Circuit decision issued after Staub, the Ninth Circuit articulated the standard as whether or not "the subordinate influenced or was involved in the decision or decisionmaking process."  See Cafasso, 637 F.3d at 1061.

vice president, instructing various managers who were not
Plaintiff's official supervisor (or, in the failure to hire
context, would not be his official supervisor), to meet in order
to vet Plaintiff as to whether or not he was an appropriate hire
for a sales manager position.  As such, Plaintiff presents
evidence raising a genuine issue of material fact regarding
whether or not O'Neill "effectively delegated" power to Hirani,
Limebrook, and the other managers regarding the tangible
employment action of either failing to hire Plaintiff as a
Wyndham manager (or in the alternative, terminating Plaintiff
from the position).  See Vance, 133 S. Ct. at 2452.  Plaintiff
declares that O'Neill told him that Hirani was "adamant about not
letting [Plaintiff] back to Wyndham, especially as a Manager."
Decl. of Beecham at 13, ¶¶ 73 & 74, ECF No. 84-2; Decl. of
O'Neill at 3, ¶ 8, ECF No. 65-1 ("I received indications of
concerns from Waikiki sales managers suggesting that there had
been conflicts in the past between [Plaintiff] and one or more of
his coworkers.").  There is evidence in the record that O'Neill
either made an employment offer or was ready to make an
employment offer when he called the Manager's Meeting (or in the
alternative, the interview) with Hirani, Limebrook, O'Neill,
Plaintiff, and other Wyndham managers on June 1, 2009.  Decl. of
O'Neill at 4, ¶ 10, ECF No. 65-1.  The transcript of the meeting
indicates that O'Neill wanted the recommendations of Hirani,

Limebrook, and the other attending managers.  See Plntf.'s CSF Ex. 45 at minutes 12:00-14:00, ECF No. 84-13 ("I think it's obvious I would love to see [Plaintiff] be able to fit in, somehow, but I want to make sure it's ok with you guys too . . .").

Additionally, it appears that O'Neill not only wanted, but also may have relied upon Hirani's and Limebrook's interpretations of past events.  There is evidence in the record that Hirani's and Limebrook's accusations of Plaintiff's character may have greatly influenced the perception of others involved in the meeting, including O'Neill.  See Plntf.'s CSF Ex. 46 at 32151 - 32157 ("TREVOR BAER: As an outsider, I've only been here a month . . . when [Limebrook] is down, I mean, I can see it in these faces, and these guys, I mean – and I back them . . . . the thing is that it worries me that they got these concerns."), 32173 - 32175, Decl. of O'Neill at 4-7, ECF No. 65-1.  Hirani at the Managers Meeting accused Beecham of putting lies and fallacies (such as Hirani participating in a threesome with Limebrook and Lam) in the Internal Problems Letter.  See id at 32174.  The Internal Problems Letter itself never mentions a threesome, yet Hirani insisted that Plaintiff lied about the threesome and therefore Hirani could not trust Plaintiff.  Id. at 32175-76 ("ALY HIRANI: I wasn't even here and I was put into a letter based on lies and fallacies . . . CHRISTOPHER BEECHAM:

This is not true . . . . ALY HIRANI: Absolutely it is.  I don't have any – I don't have any reason to make up stuff.").  O'Neill never verified the contents of the Internal Problems Letter, but apparently changed his initial decision to hire Plaintiff based on the representations at the meeting.  See Def.'s MSJ at 10-11, ECF No. 64-1; Decl. of O'Neill at 4, ¶ 12, 7, ¶ 26-27; Plntf.'s CSF Ex. 46 at 32180 ("JONATHAN O'NEILL: Can we get over it or not?  ALY HIRANI: No, man.  This guy, I gotta live with him.").  Based on the evidence in the record, a question of fact exists as to whether or not O'Neill delegated the power to take tangible employment actions to Hirani and Limebrook based on his reliance on their recommendations, and whether or not Hirani's and Limebrook's bias resulted in Wyndham's refusal to employ Plaintiff as a manager.  See Vance, 133 S. Ct. at 2443 (2013); Bergene v. Salt River Project Agr. Imp. & Power Dist., 272 F.3d 1136, 1141 (9th Cir. 2001) (issue of fact existed because immediate supervisor may have relied on former supervisor's assessment of plaintiff's abilities regarding promotion decision); Gee v. Principi, 289 F.3d 342, 347 (5th Cir. 2002) (biased subordinate's negative statements of plaintiff at a meeting to decide a promotion, combined with witness testimony

that these statements affected the decision-maker, raised

question of fact precluding summary judgment for employer).[11]

The Court finds that, even if O'Neill relied upon

Hirani's and Limebrook's recommendation, there is still an issue

of fact regarding whether or not any ageist bias infected the

decision.  Neither Hirani nor Limebrook made any comments

regarding age bias at the Manager's Meeting.  See Plntf.'s Ex.

46.  While these managers were certainly antagonistic toward

Plaintiff because of the Internal Problems Letter; Plaintiff must

demonstrate that Hirani's and Limebrook's adverse statements

occurred because of age discrimination, not just personal

hostility.  However, viewing the evidence in the light most

favorable to Plaintiff, the Court concludes that a jury may find

that the adverse action occurred because of age discrimination.

Regarding Hirani's and Limebrook's alleged animus

regarding age, Plaintiff declares that Hirani referred to him as

an "old fart" on numerous occasions.  Decl. of Beecham at 18, ¶

100-101, ECF No. 84-2.  Plaintiff also states that Hirani and

Limebrook would comment on attractive women and then tell

Plaintiff that the women were "not for you.  You're too old."

Id. at ¶ 102.  Plaintiff also states that Hirani and Limebrook

---

[11] This case was cited by the Ninth Circuit when discussing
when an employer may be liable for illegal discrimination based
upon the bias of a subordinate.  Lakeside-Scott v. Multnomah
Cnty., 556 F.3d 797, 807 n. 11 (9th Cir. 2009)

would comment on the sales techniques of another Wyndham salesperson by stating that "he's from the old school, that what [sic] the old timers or the old guys did it." Id. at 18, ¶ 104. Defendant argues that these remarks are merely "stray remarks" that cannot establish discrimination.  Def.'s Reply at 6-7, ECF No. 91.  Although the remarks may not constitute sufficient direct evidence, the Ninth Circuit has noted that such remarks may be "weak circumstantial evidence" of discriminatory animus. See Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993).

Even if O'Neill did not know of Hirani and Limebrook's discriminatory comments in 2007 and 2008, the company may still be liable for the bias of these managers if they significantly influenced the outcome of the decision not to hire Plaintiff (or in the alternative, to terminate his employment).  See Poland, 494 F.3d at 1182-83 (holding that company may be liable for subordinate's bias even if the ultimate decision-maker did not have discriminatory animus) and Gee v. Principi, 289 F.3d 342, 347 (5th Cir. 2002) (retaliatory animus of employee who made negative comments to the ultimate decision-maker raised issue of fact precluding summary judgment even though decision-maker did not know of plaintiff's protected activity).

The Court finds that these remarks, in conjunction with Plaintiff's other circumstantial evidence, raise a genuine issue of material fact as to Defendant's discriminatory animus toward

Plaintiff.  See Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995) (holding that plaintiff raised a genuine issue of material fact regarding pretext by presenting single derogatory comment by supervisor in conjunction with other circumstantial evidence).

In this case, Plaintiff submits additional circumstantial evidence that, in 2007-2008 while he worked as a salesperson, the managers favored another Wyndham salesperson because of her age by giving her more profitable tours than older workers and ignoring her violations of company policy.[12/]  Decl. of Beecham at 3 - 6, 8, ECF No. 84-2; Plntf.'s CSF Ex. 19, D-OA 01057-61.  In light of the evidence presented, the Court concludes that, in addition to the question of fact regarding Hirani's and Limebrook's involvement in Plaintiff's employment decision, there is a question of fact as to whether or not age

_____

[12/]  While Plaintiff may not be able to recover for the 2007 and 2008 incidents of alleged discrimination (including the ageist remarks mentioned above) due to exhaustion or statute of limitations issues, these incidents may be used as background evidence in support of his timely filed 2009 claim.  See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (holding that a plaintiff may use "prior acts as background evidence in support of a timely claim"), Nelson v. City & Cnty. of San Francisco, 123 Fed. Appx. 817, 820 (9th Cir. 2005) ("Past discriminatory acts, even if a claim based on them would be untimely, are admissible as background evidence to show present discrimination."), and DeCaire v. Mukasey, 530 F.3d 1, 18 (1st Cir. 2008) ("A discriminatory action for which a claim was not timely filed cannot be used as a basis to award relief but can be used as background in support of later claims of gender discrimination.").

bias motivated Hirani's and Limebrook's actions.  Therefore, the
Court DENIES Defendant's Motion for Summary Judgment as to
Plaintiff's ADEA disparate treatment claim.

### C. Retaliation

To establish a prima facie case of retaliation,
Plaintiff must provide evidence of the following:  "(1) [he]
engaged in a protected activity, (2) he suffered an adverse
employment action, and (3) there was a causal connection between
the two." Surrell v. California Water Serv. Co., 518 F.3d 1097,
1108 (9th Cir. 2008).  Defendant does not contest that Plaintiff
has presented evidence that an adverse action occurred, either in
the form of a failure to hire Plaintiff for the manager position,
or in the form of firing Plaintiff from the manager position.
See Def.'s MSJ at 15, ECF No. 64-1.

Regarding the first requirement, Defendant argues that
the Internal Problems Letter is not a protected activity because
it "does not constitute or reflect opposition to any
discrimination prohibited under Title VII, the ADEA, or Haw. Rev.
Stat. § 378-2." Def.'s MSJ at 16, ECF No. 64-1.  According to
Defendant, the Internal Problems Letter did not indicate
discrimination against older employees as a class, and the Letter
indicated that "all of the salespeople on the rotor were being
impacted, whether young or old." See id. at 17.

-32-

Plaintiff in turn argues, without any case law support, that the Internal Problems Letter demonstrates that Plaintiff opposed a discriminatory practice because the younger salespeople outside of the protected class who originally signed the Letter later issued statements minimizing their role in the Internal Problems Letter.  See Plntf.'s Opp. at 19, ECF No. 83-2.

In order to constitute a protected activity, "the opposed conduct must fairly fall within the protection of Title VII [or the ADEA]."  Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988).  However, the Ninth Circuit has stated that the anti-retaliation provision in Title VII, and accordingly the ADEA, protects an employee who has a "reasonable belief that the employer has engaged in an unlawful employment practice," even if the practice itself was not actually discriminatory or otherwise unlawful.  Moyo v. Gomez, 32 F.3d 1382, 1385, amended, 40 F.3d 982 (9th Cir. 1994); Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1411-12 (9th Cir. 1987).[13]  "The reasonableness of [a plaintiff's] belief that an unlawful employment practice occurred must be assessed according to an objective standard – one that makes due allowance, moreover, for the limited knowledge

_____

[13] The Court uses Title VII cases to draw relevant legal principles because the courts have ruled that Title VII case law applies to ADEA retaliation claims.  Merrick v. Farmers Ins. Grp., 892 F.2d 1434, 1441 (9th Cir. 1990) and Yap v. Slater, 165 F. Supp. 2d 1118, 1126 (D. Haw. 2001).

possessed by most Title VII plaintiffs about the factual and legal bases of their claims." Id. at 1385-86.

In this case, Plaintiff fails to raise a genuine issue of material fact that he made complaints to express a reasonable belief that Wyndham engaged in unlawful age discrimination practices.  The Internal Problems Letter contains no references indicating that Plaintiff opposed Wyndham's practices because of a discriminating bias toward a protected class.  See Plntf.'s CSF Ex. 16, ECF No. 84-7.  Rather, the Internal Problems Letter makes approximately half a dozen references to the managers' unfair "favoritism" toward Lam, which is not the same as opposing discrimination against a protected class.  Id.; see Lee v. Potter, 2008 WL 4449568 (N.D. Cal. 2008) (affirmed by Lee v. Potter, 358 Fed. Appx. 966 (9th Cir. 2009)) (granting summary judgment because signing a petition against "favoritism" and "management decisions based on personal agendas and biases" did not constitute a protected activity since the petition did not mention discriminatory employment practices).

To the extent that Plaintiff attempts to use his summer 2007 complaints as a protected activity, the Court's discussion regarding the Internal Problems Letter also applies to the complaints Plaintiff allegedly made to Wyndham in the summer of 2007.  According to Plaintiff's deposition, the September 21, 2007 Internal Problems Letter documented the various incidents he

observed and complained about earlier in 2007.  See Def.'s CSF
Ex. A at 265, ECF No. 65-3.  Plaintiff in his deposition does not
identify any particular complaint in the summer of 2007 that is
not documented in the Internal Problems Letter.  Based on
Plaintiff's deposition, the Court concludes that the Internal
Problems Letter explains the nature of Plaintiff's summer 2007
complaints.

In Jurado v. Eleven-Fifty Corp., the Ninth Circuit
affirmed the district court's summary judgment order because the
plaintiff failed to produce evidence that he engaged in a
protected activity.  813 F.2d 1406, 1411-12 (9th Cir. 1987).  The
plaintiff, a radio disc jockey, was terminated from employment
after he refused to use only English on the radio as opposed to
speaking in both English and Spanish.  See id. at 1408-09.  The
plaintiff had complained to the company that the English-only
format would hurt his numbers and his success on the radio
because a lot of his numbers "were from Hispanic people."  Id. at
1411-12.  The Ninth Circuit concluded that expressing concerns
over personal success was not a protected activity; the plaintiff
did not complain to the company that the action constituted
discrimination against him or other Hispanics.  Id.

In this case, Plaintiff in his deposition stated that
he drafted the September 21, 2007 Internal Problems Letter to
address workplace morale and because the managers' practices were

-35-

"unfair to everybody."  Def.'s CSF Ex. A at 266, ECF No. 65-3.

He does not indicate that he opposed the unfair practices as

discriminatory toward a protected class.  Instead, Plaintiff

admits that he thought that Lam was attempting to manipulate the

rotor and managers to give her better tours, which was "unfair to

everybody on the rotor."  Id. at 270.  While Plaintiff in his

declaration dated November 3, 2013, now states that he believed

that Lam was preferred because of her age (see Decl. of Beecham

at 9, ¶ 45, ECF No. 84-2);[14/] his deposition taken on September 7,

2012, indicates that he did not complain about discrimination

directed at older people because, at the time, he thought that

the favoritism toward Lam affected "everyone," young and old

alike.  Id.  The Ninth Circuit has held that a party "opposing

summary judgment cannot create a genuine question of fact by

contradicting his prior sworn statement."  Jurado v. Eleven-Fifty

Corp., 813 F.2d 1406, 1410 (9th Cir. 1987).  The Court therefore

determines that Plaintiff's declaration is not sufficient to

create a genuine issue of material fact in light of his

statements at his deposition.

---

[14/] Defendant objects to ¶ 45 of Beecham's declaration
because it is conclusory, Plaintiff lacks personal knowledge, and
it contains hearsay by mentioning Ahuvia's feelings of
discrimination.  The Court concludes that ¶ 45 is admissible as
to Beecham's personal knowledge of writing the Internal Problems
Letter and his alleged feelings of age discrimination.  However,
the portion of ¶ 45 referring to Ahuvia's feelings of
discrimination on the basis of age is inadmissible hearsay under
Fed. R. Evid. 802 and does not fall within a hearsay exception.

The Court also rejects Plaintiff's argument that the
Internal Problems Letter was transformed into a protected
activity merely because three of the signers, Garth Starks, Jody
Myers, and Bill Groten, submitted their own letters minimizing
their role in the Internal Problems Letter.   See Plntf.'s Opp. at
19, ECF No. 83-2; Plntf.'s CSF Exs. 23, 24, & 25, ECF No. 84-8.
Plaintiff encourages the Court to infer that the complaints in
the Internal Problems Letter were about age discrimination
because the remaining two complainers fell within the protected
class of individuals over the age of 40.   The Court observes
that, according to Plaintiff's argument, any employee who falls
within a protected class and makes a complaint, regardless of the
content, can argue that such complaint is a protected activity
merely because of the plaintiff's class status.   The Court has
not found, and Plaintiff has not submitted, any cases supporting
such a broad interpretation of the protected activity element.

In fact, the case law supports the conclusion that a
protected activity must be based at least in part on the nature
of complaint instead of merely the class status of the
complainer.   See Jurado, 813 F.2d at 1410 (plaintiff of Mexican-
American descent did not establish protected activity by
complaining about company's decision to use an English-only
format because complaint involved personal success instead of
unlawful discrimination).   The fact that three signers later

-37-

downplayed their involvement in the Internal Problems Letter did not transform the complaints about favoritism in the Internal Problems Letter into complaints against age discrimination.

Although Plaintiff in the Internal Problems Letter stated that the signers may seek a "higher authority" if the company procedures did not provide a satisfactory result, Plaintiff clarifies in his deposition that he sought a "higher authority" by contacting Franz Hanning, the Wyndham President and Chief Executive Officer who was located in Orlando, Florida, in July of 2009.  Plntf.'s CSF Ex. 16 at P30060, ECF No. 84-7; Def.'s CSF Ex. D, ECF No. 65-7.  In his letter to Hanning, Plaintiff never mentions age discrimination, but instead complains "I feel there has been [i]rreparable damage done, discrimination, and a blatant defamation of my <u>character</u>, that I feel so long as the managers, Aly Hirani, and Terrence Limehouse [sic], being the main offenders hold a management position, would most definitely be in the position to further damage my <u>reputation</u> . . . This act of discrimination and retribution, has kept me from rejoining Wyndham, and severely damaged my reputation and character."  Def.'s CSF Ex. D at P40007, ECF No. 65-7 (emphasis added).  The above statements demonstrate that Plaintiff expressed concern about his personal success instead of protesting discrimination against a protected class.

-38-

Plaintiff in his deposition on September 7, 2012 and in the Hanning letter did not indicate that his reference to the "higher authority" meant the EEOC; although he now states in his November 3, 2013 declaration attached to his Opposition that he did mean the EEOC.  See Decl. of Beecham at 9, ¶ 44, ECF No. 84-2.  However, as mentioned above, Plaintiff's deposition, not his declaration, establishes his testimonial evidence for purposes of a motion for summary judgment.  Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1410 (9th Cir. 1987).  Based on the explanations in the Internal Problems Letter and Plaintiff's deposition, Plaintiff's evidence demonstrates that he opposed the favoritism toward Lam because it decreased workplace morale, violated workplace rules, and was unfair to everyone, not because he had a reasonable belief that Wyndham was committing unlawful age discrimination.  Accordingly, the Court determines that Plaintiff fails to raise a genuine issue of material fact as to whether or not Plaintiff's Internal Problems Letter or his summer 2007 complaints[15] constituted a protected activity.

Regarding the state law claims, the Internal Problems Letter and Plaintiff's summer of 2007 complaints do not constitute a protected activity under Haw. Rev. Stat. § 378-2.  In Gonsalves v. Nissan Motor Corp. in Hawaii, the Hawai'i Supreme

---

[15] As mentioned above, Plaintiff indicated in his deposition that his summer 2007 complaints were documented in the Internal Problems Letter.  See supra at 33-34.

Court held that an employee's memorandum to his employer was not a protected activity because the allegations merely involved a fellow employee's attitude and conduct that created a negative work environment.  100 Haw. 149, 163, 58 P.3d 1196, 1210 (2002). The plaintiff's memorandum actually referred to the EEOC guidelines and accused another employee of creating a "hostile working environment"; however, the Hawai'i Supreme Court found that the actual complaints about the fellow employee did not involve unlawful discrimination on the basis of a protected trait.  Id.  In this case, the complaints in the Internal Problems Letter about Lam's alleged attempts to manipulate Wyndham managers and the manager's alleged favoritism does not concern a protected trait.  See Plntf.'s CSF, Ex. 16, ECF No. 84-7.  Therefore, Plaintiff's submission of the Internal Problems Letter and his related complaints do not constitute a protected activity under Haw. Rev. Stat. § 378-2.  Gonsalves, 100 Haw. at 163.  As a result, the Court GRANTS Defendant's Motion for Summary Judgment regarding Plaintiff's ADEA and H.R.S. § 378-2 retaliation claims.[16]

### D. Hostile Work Environment

---

[16] Because the Court concludes that Plaintiff has not raised a genuine issue of material fact regarding whether or not his complaint constitutes a "protected activity"; the Court declines to address the other elements of Plaintiff's retaliation claim.

To establish a prima facie case for a hostile work environment claim, Plaintiff must provide evidence that "(1) the defendants subjected [him] to verbal or physical conduct based on [his protected trait]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Surrell v. California Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008). "A plaintiff must show that the work environment was both subjectively and objectively hostile." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1113 (9th Cir. 2004). In evaluating the objective hostility of a work environment, the factors to be considered include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1113 (9th Cir. 2004). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." Nichols v. Azteca Rest. Enterprises, Inc., 256 F.3d 864, 872 (9th Cir. 2001), see also, Henao, 927 F. Supp. 2d at 989.

The Hawaiʻi Supreme Court's hostile work environment principles are similar, although not equivalent. See Nelson v. Univ. of Hawaii, 97 Hawaiʻi 376, 390 (2001) and Henao, 927 F. Supp. 2d at 989. Under Hawaiʻi law, the "analysis of whether

-41-

particular harassing conduct was severe and pervasive is separate and distinct from the remaining requirements of a plaintiff's claim:  it is the harasser's conduct which must be severe or pervasive, not its effect on the plaintiff or the work environment."  <u>Arquero v. Hilton Hawaiian Village, LLC</u>, 104 Hawaiʻi 423, 431 (2004).

        In this case, Plaintiff presents no evidence that, at the June 1, 2009 Managers Meeting, "defendants subjected [him] to verbal or physical conduct" based on his protected class, which would be age.  <u>See</u> <u>Surrell</u>, 518 F.3d at 1108.  Plaintiff's transcript of the meeting does not demonstrate that any verbal conduct was age related.  <u>See</u> Plntf.'s Ex. 46, ECF No. 84-14.  <u>See</u> <u>Lalau v. City & Cnty. of Honolulu</u>, 938 F. Supp. 2d 1000, 1016 (D. Haw. 2013) (granting summary judgment on plaintiff's hostile work environment claim because hostility was not related to protected class); <u>Naʻim v. Clinton</u>, 626 F. Supp. 2d 63, 74 (D. D.C. 2009) (court granted summary judgment regarding claims of verbal conduct constituting "character assassination" because hostility was not based on protected trait).  While Plaintiff argues that he was subjected to hostility for the Internal Problems Letter; Plaintiff does not provide any legal support that hostility toward him on account of the Internal Problems Letter can form the basis for a hostile work environment claim.  <u>See</u> Plntf.'s Opp. at 26, ECF No. 83-2.

-42-

Additionally, even if Plaintiff could present a hostile work environment claim based upon the Wyndham managers' hostility towards him regarding the Internal Problems Letter, Plaintiff's claim would still fail for lack of pervasiveness.  Regarding his "employment" or "application" in June of 2009, Plaintiff only alleges one incident of verbal conduct, which is not sufficient to establish a hostile work environment violation.  Plntf.'s Opp. at 26, ECF No. 83-2; see Brooks v. City of San Mateo, 229 F.3d 917, 925 (2000) (collecting cases) (holding that single incident of harassment must be "unusually severe" and tends to include physical injury).

Plaintiff then attempts to connect the Managers Meeting to ageist comments he heard during his first term of employment with Wyndham in 2007 and 2008.  See Plntf.'s Opp. at 26, ECF No. 83-2.  However, Plaintiff's June 1, 2009 claim is not related to any hostile work environment claim based on conduct in 2007 and 2008.  The Court first notes that the hostile conduct alleged by Plaintiff in 2007 and 2008 relates specifically to his protected class of age; the conduct alleged in his June 1, 2009 claim does not contain verbal statements or physical conduct about Plaintiff's age.

Additionally, Plaintiff left his work environment at Waikiki to move to the Wyndham location in Las Vegas in December of 2008.  He then resigned from Wyndham in February of 2009 and

-43-

worked for the Marriott.  Decl. of Beecham at 9, ¶ 48, ECF No. 84-2.  Def.'s CSF at 2, ¶ 13, Ex. G, ECF No. 65; Plntf.'s CSF at 2, ECF No. 84.  The Supreme Court has indicated that an instance of hostile conduct occurring some time after a series of previous acts may not be part of a previous hostile work environment claim if there is some intervening act separating the incidents.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118, 122 S. Ct. 2061, 2075, 153 L. Ed. 2d 106 (2002) ("[I]f an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.").  In this case, Plaintiff's hostile work environment in 2007 and 2008 ceased when he transferred and then resigned; the incident on June 1, 2009 cannot be a continuation of a 2007 and 2008 work environment that had been terminated.[17/]  Cf. Collins v. United Air Lines, Inc., 514 F.2d 594, 596-97 (9th Cir. 1975) (holding that a refusal to hire is a separate and distinct unfair practice from a prior termination of employment).  Accordingly, the Court GRANTS

---

[17/]    Plaintiff does not contest Defendant's assertion that Plaintiff failed to file an EEOC charge regarding discrimination from his first term of employment with Wyndham, which was terminated in 2008.  See Def.'s MSJ at 12-13, ECF No. 64-1. Plaintiff may not improperly resurrect a hostile work environment claim from his first term of employment by attempting to connect conduct to a new term of employment.

Defendant's Motion for Summary Judgment as to Plaintiff's hostile work environment claim.

## III. Count V - Breach of Contract

Defendant and Plaintiff argue as to whether or not a contract for employment had ever been formed between Plaintiff and Wyndham.  However, even if the Court were to conclude that a genuine issue of material fact existed regarding the creation of said contract, Plaintiff's claim would not survive Defendant's Motion for Summary Judgment for the following reasons.

Defendant argues that Plaintiff cannot claim contract damages for termination of employment under an at-will contract. Def.'s MSJ at 26, ECF No. 64-1.  In Hawai'i, an at-will employment contract is, by definition, "terminable at the will of either party, for any reason or no reason at all."  Shoppe v. Gucci Am., Inc., 94 Haw. 368, 383, 14 P.3d 1049, 1064 (2000). Based upon the record, any contract that Plaintiff may have had with Defendant was a contract of indefinite duration and would therefore have been an at-will contract.  See Parnar v. Americana Hotels, Inc., 65 Haw. 370, 374, 652 P.2d 625, 627 (1982) (holding that an employment contract of indefinite duration was an at-will contract).  The Court also notes that Plaintiff conceded at the hearing that any employment contract formed in this case would have been an at-will contract.

Notwithstanding the at-will status of his alleged employment contract, Plaintiff argues in his Opposition that the contract was breached "for retaliatory and discriminatory reasons" which prevents Defendant from relying upon the at-will employment doctrine.  Plntf.'s Opp. at 31, ECF No. 83-2.  The Hawaiʻi Supreme Court created an exception to the at-will employment doctrine, holding that "an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy." Parnar v. Americana Hotels, Inc., 65 Haw. 370, 380, 652 P.2d 625, 631 (1982).  However, the Hawaiʻi Supreme Court has also held that a public policy claim may not be maintained "where the policy sought to be vindicated is already embodied in a statute providing for its own remedy for its violation."  Ross v. Stouffer Hotel Co. (Hawai'i) Ltd., Inc., 76 Haw. 454, 464, 879 P.2d 1037, 1047 (1994).

In Plaintiff's case, like Ross, the public policy at issue is Haw. Rev. Stat. § 378-2's mandate prohibiting discrimination.  See Ross, 76 Haw. 454 (rejecting H.R.S. § 378-2 public policy claim in employment case involving termination on the basis of marital status).  In Ross, the Hawaiʻi Supreme Court found that the equitable relief found in H.R.S. § 378-5 was a sufficient remedy for the plaintiff's discrimination claims; as a result, the court granted summary judgment on the plaintiff's claim that he was terminated from employment in violation of

public policy.  <u>Id.</u> at 464-65.  In light of <u>Ross</u>, Plaintiff may not maintain a breach of contract claim relying upon the public policy exception because his claims are covered by H.R.S. §§ 378-2 and 378-5.  Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Count V - Breach of Contract claim.  <u>See</u> <u>also</u> <u>Onodera v. Kuhio Motors Inc.</u>, CIV. 13-00044 DKW, 2013 WL 4511273 at *6-7 (D. Haw. Aug. 23, 2013) (granting judgment on the pleadings for wrongful termination claim because Title VII and H.R.S. § 378-2 provided a sufficient remedy); <u>Hughes v. Mayoral</u>, 721 F. Supp. 2d 947, 962 (D. Haw. 2010) (granting summary judgment on "wrongful termination in violation of public policy" because Title VII and H.R.S. § 378-2 provided a sufficient remedy); <u>United States v. Hawaii Pacific Health</u>, 490 F. Supp. 2d 1062, 1079-80 (D. Haw. 2007) (granting summary judgment on claim for wrongful termination and retaliation in violation of state public policy because, inter alia, the statutory scheme provided a remedy for violations of the public policy), <u>and</u> <u>Batacan v. Reliant Pharmaceuticals</u>, 324 F. Supp. 2d 1144, 1145 (D. Haw. 2004).

## CONCLUSION

For the foregoing reasons, the Court:

1) DENIES Defendant's Motion for Summary Judgment as to Plaintiff's Count II - ADEA and Count III - Haw. Rev. Stat.

§ 378-2 disparate treatment claims based on age discrimination;

2) GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Count II - ADEA and Count III - Haw. Rev. Stat. § 378-2 retaliation claims;

3) GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Count II - ADEA and Count III - Haw. Rev. Stat. § 378-2 hostile work environment claims; and

4) GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Count V - Breach of Contract claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, December 18, 2013.



_____
Alan C. Kay
Sr. United States District Judge

Beecham v. Wyndham Vacation Resorts, Inc., Civ. No. 11-129 ACK-BMK: ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WYNDHAM'S MOTION FOR SUMMARY JUDGMENT